1

**TREEHOUSE LAW, LLP**

2
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)

3
Joshua Nassir (SBN 318344)
Nicole Babaknia (SBN 334526)

4
2121 Avenue of the Stars, Suite 2580
Los Angeles, CA 90067

5
Telephone: (310) 751-5948

6
bheikali@treehouselaw.com
rglezakos@treehouselaw.com

7
jnassir@treehouselaw.com
nbabaknia@treehouselaw.com

8

*Attorneys for Plaintiffs and the Putative*
*Classes*

9

10

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

11

12

13
Nikelle Suarez, Leticia Nyberg, and
Kerriann Salmon, on behalf of themselves
and all others similarly situated,

14

15
                        Plaintiffs,

16
            v.

17
Juvia's Place LLC,

18
                        Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

Plaintiffs Nikelle Suarez, Leticia Nyberg, and Kerriann Salmon ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this Class Action Complaint against Juvia's Place LLC ("Defendant"), based upon personal knowledge as to themselves, and upon information, investigation and belief of their counsel.

## INTRODUCTION

1.      This class action seeks to challenge Defendant's deceptive marketing, advertising, and sale of certain Juvia's Place eyeshadow palettes (the "Products") containing synthetic color additives that are unsafe and unfit for use around the eye.

2.      As further outlined and depicted below, Defendant has marketed the Products with affirmative representations that lead reasonable consumers to believe they can safely use, and should be using, the Products as eyeshadows around the eye, when that is not the case. Moreover, Defendant has failed to disclose that the Products contain unsafe, unfit, and unapproved color additives for use in the eye area.

3.      Based on Defendant's representations and omissions, consumers, including Plaintiffs, have purchased the Products under the reasonable belief that all the color palettes in the Products (including their added color additives), were all safe and fit for use around the eye.

4.      Unbeknownst to Plaintiffs and other consumers, the Products contain color additives that are unsafe, unfit, and not even approved for use in eyeshadows.

5.      Had consumers been aware that the Products contained color additives that are unsafe, unfit and unapproved for use in eyeshadows, they would not have purchased the Products or would have paid substantially less for them. Accordingly, Plaintiffs and Class members were deprived of the benefit of their bargain and were therefore financially injured by Defendant's conduct.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are at least thousands of proposed Class members, the aggregate amount in

controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Classes, including Plaintiffs.

7.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California through its sale of the Products and other products in California, to California consumers.

8.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this District. Specifically, Plaintiff Suarez resides in this District and she purchased one of the Products in this District.

**PLAINTIFFS**

9.     Plaintiff Suarez is a citizen of California and currently resides in Citrus Heights, California. In or around August 6, 2020, Plaintiff Suarez purchased The Warrior 3 eyeshadow palette from the Ulta Beauty online webpage. In or around November 25, 2020, Plaintiff Suarez purchased The Nubian Royalty Gift Set (containing The Nubian Royal eyeshadow palette), The Berries eyeshadow palette, The Chocolates eyeshadow palette, The Mauves eyeshadow palette, The Sweet Pinks eyeshadow palette, and The Nudes eyeshadow palette, all from their respective Ulta Beauty online webpages. In or around November 1, 2021, Plaintiff Suarez purchased The Blushed Rose eyeshadow palette from the Ulta Beauty online webpage. In or around September 8, 2022, Plaintiff Suarez purchased the Garden of Juvia eyeshadow palette from the Ulta Beauty online webpage. Based on all the Products being advertised as eyeshadows on these webpages, and the lack of any disclosure or other qualifying statement informing her that the Products contained color additives that were not safe, fit, and approved for use around the eye area, Plaintiff Suarez reasonably believed all the individual color palettes in the Products (including all their color additives) were indeed safe, fit, and approved for use in the eye area. Upon purchase and use of these Products, Plaintiff Suarez experienced unusual color staining around her eyes after removing the eyeshadows from her eyes. Had Plaintiff Suarez known that the Products contained unsafe, unfit, and unapproved color additives, she would not have purchased the Products. As a result, she has been injured as a direct result of Defendant's misleading advertising and omissions.

10.     Plaintiff Nyberg is a citizen of California and currently resides in Los Angeles, California. In or around mid-2021, Plaintiff Nyberg purchased The Masquerade Mini eyeshadow palette from a brick-and-mortar Ulta Beauty store in Los Angeles County. Based on the images of three women with eyeshadow applied on their eyes on the front label of the Product, as well as the lack of any conspicuous disclosure or other qualifying statement on the front label informing her that the Product contained color additives that were not safe, fit, and approved for use around the eye area, Plaintiff Nyberg reasonably believed all the individual color palettes in the Product (including all their color additives) were indeed safe, fit, and approved for use in the eye area. Upon purchase and use of the Product, Plaintiff Nyberg experienced itching and swelling on her eyelids, as well as teary eyes. Had Plaintiff Nyberg known that the Product contained unsafe, unfit, and unapproved color additives, she would not have purchased the Product. As a result, she has been injured as a direct result of Defendant's misleading advertising and omissions.

11.     Plaintiff Salmon is a citizen of New York and currently resides in Brooklyn, New York. In or around October 20, 2023, Plaintiff Salmon purchased the Juvia's Place Culture 2 eyeshadow palette from the Shop app. Based on the various references to the word "eyeshadow" on the product listing,[1] and the lack of any conspicuous disclosure or other qualifying statement on the page informing her that the Product contained color additives that were not safe, fit, and approved for use around the eye area, Plaintiff Salmon reasonably believed all the individual color palettes in the Product (including all their color additives) were indeed safe, fit, and approved for use in the eye area. After purchasing this Product, Plaintiff Salmon eventually used the "Mother Land," "Woroba," "Jollof," and "Lagos" color palettes within the Product, and experienced unusual color staining around her eyes after removing these specific eyeshadows from her eyes. The staining lasted for several days and would not come off with makeup remover. As a result of staining, Plaintiff Salmon's eyes also became irritated and sore. In or around November 16, 2023, Plaintiff Salmon separately purchased the Juvia's Place Culture eyeshadow palette from the Shop app. Based on the various references to the word "eyeshadow" on the product listing,[2] and the lack of any conspicuous

---

[1] https://shop.app/products/6767867428967?variantId=40121398198375&fromShop=true (last visited April 23, 2024)
[2] https://shop.app/products/6633616015463?variantId=39613256630375&fromShop=true (last visited April 23, 2024)

CLASS ACTION COMPLAINT

disclosure or other qualifying statement on the page informing her that the Product contained color additives that were not safe, fit, and approved for use around the eye area, Plaintiff Salmon reasonably believed all the individual color palettes in the Product (including all their color additives) were indeed safe, fit, and approved for use in the eye area.  After purchasing this Product, Plaintiff Salmon eventually used the "Jigawa," "Edo," "Wolof," and "Katanga" color palettes within the Product, and experienced unusual color staining around her eyes after removing these specific eyeshadows from her eyes. The staining lasted for several days and would not come off with makeup remover. As a result of staining, Plaintiff Salmon's eyes also became irritated and sore. Had Plaintiff Salmon known that the Products contained unsafe, unfit, and unapproved color additives, she would not have purchased the Products, or would have paid significantly less for them. As a result, she has been injured as a direct result of Defendant's misleading advertising and omissions.

12.    Despite Defendant's misrepresentations and omissions, Plaintiffs Salmon and Suarez would purchase the Products, as advertised, if they did not contain unsafe, unfit, and unapproved color additives. Although Plaintiffs Salmon and Suarez regularly shop at stores, including online retailers, that carry the Products and other eyeshadow products, absent an injunction of Defendant's deceptive advertising and omissions, Plaintiffs Salmon and Suarez will be unable to rely with confidence on Defendant's advertising of the Products in the future. Furthermore, while Plaintiffs Salmon and Suarez currently believe the Products' advertising is misleading, they lack personal knowledge as to Defendant's specific business practices, and thus, they will not be able to readily determine whether the Products contain unsafe, unfit, and unapproved color additives or not. This is especially true because the advertising of the Products does not adequately disclose that the Products contain unsafe, unfit, and unapproved color additives, or that certain color palettes should not be used around the eye. This leaves doubt in Plaintiffs Salmon and Suarez's minds as to the possibility that the Products in the future could be made in accordance with the Products' representations as eyeshadows. This uncertainty, coupled with their desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading affirmative representations or forcing Defendant to make appropriate disclosures. In addition, absent an injunction, other Class members will continue to purchase the Products,

reasonably but incorrectly believing that the Products are safe eyeshadows that contain only safe, fit, and approved color additives.

**DEFENDANT**

13.    Defendant Juvia's Place LLC is a limited liability company organized and existing under the laws of the State of Wyoming, with its principal place of business located in Secaucus, New Jersey. Defendant Juvia's Place LLC, through its agents, is responsible for the manufacturing, marketing, advertising, packaging, distribution, and sale of the Products in the U.S., including in California and in this District specifically.

**FACTUAL ALLEGATIONS**

**I.    Defendant Markets The Products As Eyeshadows To Be Used On The Eye Area**

14.    Defendant, a prominent American manufacturer specializing in makeup and cosmetic products, sells Juvia's Place brand beauty products and cosmetics, including the challenged eyeshadow palettes. Operating primarily through its website, in addition to e-commerce platforms such as the Shop app, Ulta.com, and in Ulta Beauty brick and mortar stores, Defendant has garnered a substantial customer base both domestically and internationally.

15.    The Products challenged in this Complaint encompass the following eyeshadow palettes manufactured, labeled, distributed, and sold by Defendant: Culture, Culture 2, The Coffee Shop, Afrogalactic, Garden of Juvia, The Zulu, The Candy Shop, The Chocolates, The Berries, The Sweet Pinks, The Warrior 3, Olori 1, Olori 2, and Olori 3, The Bronzed and Bronzed Rustic, The Nubian and The Nubian 2, The Nubian Royal, The Wahala, The Wahala 2, The Magic Mini, Fula, Blushed Rose, Vanessa, The Masquerade Mini, The Festival, The Mauves, the Nudes palettes (collectively, the "Product(s)").

16.    The Products are eyeshadow cosmetics clearly intended for use around the eye and therefore are marketed by Defendant as such.

17.    As an initial matter, on the Juvia's Place website, Defendant categorizes and lists the Products as "Eyeshadow Palettes" under the "Eyes" tab. On the same pop-up menu, there is an image of a woman with Juvia's Place eyeshadow clearly applied to her eyes, as emphasized by the text over stating "show-stopping palettes." *See below* (yellow outlining added for emphasis):

18.     Moreover, on the specific Product pages on the Juvia's Place website, Defendant consistently refers to the Products as "Eyeshadow" and sometimes offers "Eyeshadow Shade Descriptions" for every specific color palette. Several examples of these pages are depicted below. *See images on next pages* (yellow outlining added for emphasis):

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## The Wahala Eyeshadow Palette

$38.00

[ − | 1 | + ]    **ADD TO BAG**

or 4 interest-free payments of $9.50 with **afterpay⬦**
Learn More

The Wahala Eyeshadow Palette lets you unleash your fiercest eyeshadow looks with its expansive array of 20 bold and intense shades--including green eyeshadow, orange eyeshadow, and cosmetic glitter eyeshadow, too.

Wa-ha-la is a Nigerian Pidgin word meaning drama, trouble, and intensity.

We were heavily inspired by the craftsmanship of African Masks, which embody traditional culture and are used in ceremonial activities. A mask must come to life by the wearer of the mask to symbolize a mood. We played around with very symbolic colors which represent unity, love, excitement, fruitfulness, boldness, authority, and lastly, growth and healing. All of which can be dramatic depending on the wearer of the mask.

Featuring shades made to play, you'll find full-spectrum color with all-day-every-day wearability, making it the best rainbow eyeshadow palette around.

### EYESHADOW SHADE DESCRIPTIONS:

BE YOU: A matte dark berry burgundy

UNAFRAID: A shimmery medium-toned purple with a frosty finish

ENVY: A beautiful shimmer pink-violet duo chrome with light blue pearls

WOKE: A matte lavender violet

STANDUP: A shimmery champagne

PRIDE: A soft muted matte mauve-y nude

SIS: A matte cool toned dark brown

UNSHOOK: A deep shimmery pewter

FIGHTER: A metallic vibrant light medium green

GOSSIP: A intense buttery metallic gold with a green undertone

OVER SABI: A dark yellow mustard brown

**SKU: 1000798**

CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

19.     Defendant's advertising of the Products on Ulta.com is substantially similar to its advertising on its own website, as the Products are marketed on Ulta.com for use as "eyeshadows" around the eye. For example, on the Ulta.com page for the Culture 2 Product, the Product is described as an "Eyeshadow Palette" and the page features an image of a woman wearing the eyeshadow on and around her eyes. *See below* (yellow outlining added for emphasis).




20.     In store, at Ulta Beauty brick-and-mortar stores, the Products are similarly advertised as "Eyeshadow Palettes." *See below examples.*[3]



[3] Images taken on March 30, 2024, at an Ulta Beauty store in Culver City, California.

10

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

21.     Through its foregoing marketing materials and affirmative product descriptions, Defendant has consistently portrayed the Products, and all their ingredients, as safe, suitable, and intended for use as eyeshadows.

22.     Based on Defendant's affirmative misrepresentations outlined herein, reasonable consumers are led to believe that the Products, and all their color additives, are safe and fit for use around the eye as eyeshadows.

## II. Defendant Fails To Adequately Disclose That The Products Contain Color Additives That Are Unsafe, Unfit, And Unapproved For Use Around The Eye, Or That Certain Color Palettes Within The Products Are Not Intended For Use Around The Eye Area

23.     Despite marketing the Products as eyeshadows intended for use around the eye, Defendant fails to adequately disclose that certain color palettes in the Products contain color additives that are unsafe, unfit, and unapproved for use around the eye, or that certain color palettes in the Products should not be used around the eye area. As depicted through some examples below, the specific Product webpages on the Juvia's Place website make no such conspicuous disclosures. *See below examples*.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    24.    The same is true for the Product pages on Ulta.com, which contain no such disclosure.

23  *See example below.*

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



**Culture Eyeshadow Palette**
Only here  |  Item 2596031
4.7 ★★★★☆  188 Reviews ↓

**$38.00**
or 4 interest-free payments of $9.50 with afterpay ⓘ

$10 off any $50 qualifying pickup order                    →

**ADD TO BAG**      ♡

Check in-store availability

Earn points with this purchase.®
SIGN IN OR CREATE AN ACCOUNT

**Summary**

Join Juvia's Place on their explorative adventure
of the beautiful and rich culture of Africa. A show
stopping burst of unique and irresistible shades
destined to make any look pop!

Details                                                        —

Shades

- Row 1- Naira Land (matte orange), Ife (soft green shimmer),
  Benin (matte pink), 9JA (matte clay), Afro Beats (Matte
  Turquoise), Boronu (Shimmer Blue)
- Row 2- Jigawa (Matte Tangerine orange), Taraba (matte olive
  green), Efik (shimmer cream), Delta (matte red orange),
  Yoruba (shimmer turquoise), Edo (matte midnight navy blue)
- Row 5- Wazobia (matte chestnut), Biafra (shimmer gold),
  Kalabari (matte peachy pink), Ijaw (shimmer champagne),
  San (shimmer sky blue), Wolof (shimmer lilac)

21
22

**III.    The Products Contain Color Additives That Are Unsafe and Unfit For Use In Cosmetic**
**Products Intended For Use Around the Eye**

23        25.     Despite Defendant's affirmative representations and omissions about the Products, the

24   Products contain at least the following color additives that are unsafe and unfit for use in cosmetics

25   to be used around the eye:

26             A.     Culture: Red 6, 7, 21, 27, and 28; Yellow 6 and 10.

27             B.     Culture 2: Red 6, 7, 21, 27, and 28; Yellow 6 and 10.

28             C.     The Coffee Shop: Red 6, 7, and 27; Yellow 6.

CLASS ACTION COMPLAINT

1      D.      Afrogalactic: Red 6, 21, 27, and 28; Yellow 6.

2      E.      Garden of Juvia: Red 21, 27, and 28; Yellow 6.

3      F.      The Zulu: Red 6, 7 and 27; Yellow 10.

4      G.      The Candy Shop: Red 6, 7, 21, 27 and 28; Yellow 6 and 10.

5      H.      The Chocolates: Yellow 6.

6      I.      The Berries: Red 7 and 27.

7      J.      The Sweet Pinks: Red 21, 27; Yellow 10.

8      K.      The Warrior 3: Red 6 and 27.

9      L.      Olori 1: Red 6; Yellow 10.

10      M.      Olori 2: Red 6, 21, 27 and 28.

11      N.      Olori 3: Red 6, 7, and 27; Yellow 6.

12      O.      The Bronzed/ Bronzed Rustic: Red 6; Yellow 6.

13      P.      The Nubian: Red 6 and 21; Yellow 6.

14      Q.      The Nubian 2: Red 6, 27, and 33; Yellow 6.

15      R.      The Nubian Royal: Red 7 and 27.

16      S.      The Wahala: Red 6, 7, 21 and 27; Yellow 6 and 10.

17      T.      The Wahala 2: Red 7, 21, 27; Yellow 6 and 10.

18      U.      The Magic Mini: Red 6, 7, and 27; Yellow 6 and 10.

19      V.      Fula: Red 6, 7, 21, and 28; Yellow 6.

20      W.      Blushed Rose: Red 6, 7, 21 and 27; Yellow 6.

21      X.      Vanessa: Red 7 and 27.

22      Y.      The Masquerade Mini: Red 6, 7, 27, and 33; Yellow 6.

23      Z.      The Festival: Red 6, 7, 21, 27; Yellow 6.

24      AA.      The Mauves: Red 27 and 33.

25      BB.      The Nudes: Yellow 6.

26      26.      The foregoing color additives are unsafe and unfit for use around the eye. Indeed, the

27  risks and harm associated with using these synthetic colors around the eye are well documented.

28      27.      Spectra Colors Corporation's Safety Data Sheets for Red No. 6, 7, 21, 27, 28, and 33

each state that these colors "cause[] eye irritation" and that if the colors gets into the eye, one should "Rinse cautiously with water for several minutes."[4] Some of the safety data sheets also warn to "handle with care" and "avoid eye and skin contact."[5]

28.     These warnings are for good reason. According to Gloria Lu, a cosmetic chemist, red pigments can cause staining, skin irritation, and allergies, and the FDA's refusal to permit the use of certain colors in eye cosmetics likely means that the pigments underwent safety testing and were not approved for eye area use.[6]

29.     Similarly, the yellow pigments used by the Defendant in the Products have also specifically been shown to be unsafe around the eye. For example, Flinn Scientific that Yellow 6 is a hazard for "skin and serious eye damage, corrosion, or irritation."[7] The same is true for Yellow 10.[8]

30.     Moreover, the skin around the eye is extremely sensitive. As Dr. John Zampella, assistant professor of dermatology at NYU explains, "eyelid skin is the thinnest skin on your body… irritating makeup and skin-care products can penetrate it more easily, and therefore it's more sensitive to irritants and allergens than skin on most other parts of your body."[9] For this reason, the red and yellow color additives used by the Defendant in its Products are particularly hazardous to unsuspecting customers applying the Products around the eye area, as directed by the Defendant's marketing.

31.     Numerous customer reviews concerning Defendant's Products corroborate the foregoing, indicating instances of staining, irritation, and discomfort following the use of the Products

---

[4] *Safety Data Sheet (SDS) D & C RED 6 Barium Lake LM*, Spectra Colors Corporation (Dec. 15, 2016), https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.006LM0-SDS.pdf; *Safety Data Sheet (SDS) D & C RED 7 Ca LAKE ~52% Ba Free*, Spectra Colors Corporation (Apr. 24, 2015), https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.007LC0-SDS.pdf; *Safety Data Sheet (SDS) D & C RED 21 ALUM LAKE MS*, Spectra Colors Corporation (Dec. 15, 2016), https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.021LM0-SDS.pdf; *Safety Data Sheet (SDS) D & C RED 27 AL LAKE MS*, Spectra Colors Corporation (Dec. 15, 2016), https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.027LM0-SDS.pdf; *Safety Data Sheet (SDS) D & C RED 28*, Spectra Colors Corporation (Apr. 23, 2015), https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.028000-SDS.pdf; *Safety Data Sheet (SDS) D & C RED 33*, Spectra Colors Corporation (Apr. 23, 2015), https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.033000-SDS.pdf (collectively, "SDS, Red Dyes").

[5] SDS, Red Dyes, *supra* note 2.

[6] A.A Newton, *Is Your Eye Makeup Actually 'Eye-Safe'?*, Self.com (Nov. 6, 2019), https://www.self.com/story/eye-safe-makeup.

[7] *FD&C Yellow 6 Food Dye Safety Data Sheet (SDS)*, Flinn Scientific (Mar. 25, 2014), https://www.flinnsci.com/sds_843.3-fdc-yellow-6-food-dye/sds_843.3/.

[8] *Safety Data Sheet Dandc Yellow No. 10*, Spectrum (2019), https://www.spectrumchemical.com/media/sds/DC200_AGHS.pdf.

[9] Newton, *supra* note 4.

CLASS ACTION COMPLAINT

in question. For example, the following review was posted on Ulta.com for The Candy Shop Eyeshadow Palette:[10]

★★★☆☆  **great colors**

makaykay
1 year ago
California

I had an allergic reaction to it but it was such a pretty pallete

★★★☆☆  **okay**

Cnbarlow
6 months ago
Al

the neons are bright that's about the only thing. I used 3 of the pinks today and they stained the skin and after wearing a while it started to irritate my eyelids so I tried removing. It took a cleansing balm, face wash, and micellar water to get most of it off. You can still see some of the bright pink I had on the outer corner of my eye.

    32.    In addition, the following review was posted on the Juvia's Place web page for The Wahala Eyeshadow Palette:[11]

★☆☆☆☆
**No pigment**
Anonymous
3 years ago

**I bought this pallet because I heard paid influencers talk about it. It is trash. Hate it. Irritated my eyes. Why I tried to return the item because of the poor quality they said nope!! And told me to wear some moisturizer before applying. Hate it.**

Helpful? 👍 (0) 👎 (1)      Report

---

[10] https://www.ulta.com/p/candy-shop-eyeshadow-palette-pimprod2037023
[11] https://www.juviasplace.com/products/wahala-palette-eyeshadow-palette

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33.     The following reviews were posted on the Juvia's Place webpage for The Zulu:[12]

★★★★☆

**The Zulu**

**Aaliyah**

3 years ago

all shades had great pigment except for the yellow. The shades orange, pink, and purple did stain my eyes after only using them once, but other than those all the other shades where great :)

Helpful?  👍 (0)  👎 (0)     Report

★☆☆☆☆

**Disappointed**

**Nubia**

3 years ago

I bought this palette cause I already had the nubian and it's my favorite palette ever, but this one was COMPLETELY DIFFERENT from the nubian. It smells like chemicals so bad and has no pigment, very hard to blend and stains the skin. I tried to contact them to try to solve the problem but they never answered after I informed what they needed. Regretted.

Helpful?  👍 (0)  👎 (0)     Report

34.     The following review was posted on Amazon.com webpage for the Olori 1 eyeshadow:[13]

👤  Muff

⭐☆☆☆☆   **Shades 1 and 4 are not for immediate eye area**

Reviewed in the United States on September 28, 2023

**Verified Purchase**

This was a let down because 2 shades out of the 6 shade palette was not for the immediate eye area. Even worse the palette tells you shades 1 and 4 but there are no shade names or indicator that I can see to confirm which shades are definitively 1 and 4. Pretty colors but I was disappointed by 1/3 of the palette not being meant to be used near the eyes.

35.     The following review was posted on the Ulta.com webpage for The Culture eyeshadow palette:[14]

---

[12] https://www.juviasplace.com/products/the-zulu-eye-shadow-palette

[13] https://www.amazon.ae/product-reviews/B0BD7BYMJ7/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar

[14] https://www.ulta.com/p/culture-eyeshadow-palette-pimprod2031390

20

CLASS ACTION COMPLAINT

★★★☆☆  **Pretty but not for me :(**

Cassie
1 year ago
Bellevue, OH

I thought the purples were so pretty! Unfortunately I had some sort of allergic reaction to it and cannot wear it. My eyes got swollen, puffy, red, and watery the next day. And it's happened twice now so I am done wearing it :(

36.     The following reviews were posted on the Ulta.com webpage for The Sweet Pinks eyeshadow palette:[15]

★☆☆☆☆  **None of these are eye-safe.**

BkGirl
4 months ago
New York city

I felt a little tingly itch on my eyelid immediately. Why are categorizing this makeup as "eyeshadow" if it's not safe to use in the eye area?

★☆☆☆☆  **Entire pallette is not suitable for immediate eye area.**

No way
3 years ago
undisclosed

If I could give zero stars I would. If I knew this was not eye safe I would of never bought it. The web site did not state the warning . I will not trust a company that will not respect it's customers.

✔ Verified Reviewer

★☆☆☆☆  **Do NOT use if you have sensitive eyes!!**

Kim
3 years ago
Sacramento, CA

I wanted to do a cute pink look today so I went and bought this eye shadow palette. Used it as soon as I got home and 30 min later my eyes started stinging and watering. After checking the packaging, the back says that all shades are unsafe to be near the immediate eye area. I wouldn't recommend this for anyone with sensitive skin. My eyes still hurt hours after washing the product off.

★★★☆☆  **VERY pigmented**

Milspse28
3 years ago
undisclosed

I love the colors, low fall out, very pigmented to the point that the matte colors stain the skin slightly. Used 3 makeup removers back to back and could not get it off completely. Hence the 3 stars

★★★☆☆  **misleading**

3 years ago
.

it literally says to not use this product on near/around the eyes.... very misleading! should not advertise as eye shadow

[15] https://www.ulta.com/p/sweet-pinks-eyeshadow-palette-pimprod2018814

★★☆☆☆   **Not for Sensitive Eyes**

Ella
3 years ago
Cali

My intial look came out pretty, but my right eye was soon irritated, followed by my left a few hours later. I had to take it off. It's unfortunate because it is such a pretty color story.

37.     These reviews are consistent with Plaintiffs' experiences. As referenced above, upon application and use of the Products, Plaintiffs Salmon and Suarez both experienced color staining around their eyes. Moreover, upon application and use of the Masquerade Mini eyeshadow palette, Plaintiff Nyberg experienced itching and swelling on her eyelids, as well as teary eyes.

38.     Lastly, although the risks of using the challenged color additives can be demonstrated independently by way of the foregoing facts, it is worth noting that the FDA has also reviewed, researched, and carefully considered[16] the safety of these color additives around the eye and has deliberately decided to not approve them for that use, rendering them unsafe for that purpose. California law has followed course with the Sherman Food, Drug, and Cosmetic Law. This is further outlined below in Sections IV-V.

**IV.     Defendant's Conduct Violates California's Laws on Color Additives In Cosmetics**

39.     California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), codified as California Health and Safety Code §§ 109875 to 111929.4, governs the formulation, marketing, labeling, and sale of food, drugs, and cosmetics, including the use of color additives in cosmetics. California Health and Safety Code §§ 111660 to 111820 specifically cover cosmetics.

40.     Of note, under California Health and Safety Code § 111730 "[a]ny cosmetic is misbranded if its labeling is false or misleading in any particular." Here, the labeling, marketing, and advertising of the Products are false and misleading because they represent that the Products are eyeshadows that are all safe and intended for use around the eye, when that is not true for all the color

---

[16] *See* https://www.fda.gov/consumers/consumer-updates/how-safe-are-color-additives ("In the approval process, the FDA evaluates safety data to ensure that a color additive is safe for its intended purposes.").

CLASS ACTION COMPLAINT

palettes in each Product. As such, the Products are misbranded and violate California Health and Safety Code § 111730.[17]

41.     Moreover, under California Health & Safety Code § 111665, "[a]ny color additive shall be considered **unsafe** for use with respect to any cosmetic unless there is in effect a regulation adopted pursuant to Section 110090 that prescribes its use in cosmetics." (emphasis added).[18]

42.     California Health and Safety Code § 110090 in turn states that "[a]ll color additive regulations and any amendments to the regulations adopted pursuant to the federal act, in effect on November 23, 1970, or adopted on or after that date, are the color additive regulations of this state." Thus, California law has adopted all FDA regulations on color additives in cosmetics and has imposed parallel requirements for cosmetics under separate state law.

43.     The FDA strictly regulates color additives in cosmetics. *See* 21 U.S.C. § 379e. Specifically, federal law prohibits the use of color additives in cosmetics – deeming them unsafe – **unless the color additives are approved specifically for the intended use**.[19] *See* 21 U.S.C. § 379e(a)(1)(A) ("A color additive shall, with respect to any particular use (for which it is being used or intended to be used or is represented as suitable) in or on food or drugs or devices or cosmetics, be **deemed unsafe** for the purposes of the application of section 342(c), 351(a)(4), or 361(e) of this title, as the case may be, unless . . . there is in effect, and such additive and such use are in conformity with, a regulation issued under subsection (b) of this section listing such additive for such use, including any provision of such regulation prescribing the conditions under which such additive may be **safely** used.") (emphasis added).

44.     21 U.S.C. § 379e(b)(2)(B) in turn states that the FDA's regulations "may list such additive only for any more limited use or uses for which it is suitable and may **safely** be employed." (emphasis added).

---

[17] Similarly, under N.Y. Educ. Law § 6818(2)(a), "A cosmetic shall be deemed to be misbranded. . . If its labeling is false or misleading in any particular." As such, the Products are misbranded and violate New York state law as well.

[18] Similarly, under California Health & Safety Code § 111755, "[a] cosmetic is **misbranded** if it is a color additive, unless its packaging and labeling are in conformity with the packaging and labeling requirements applicable to color additives prescribed under the provisions of Section 110090…." (emphasis added). Additionally, pursuant to California Health and Safety Code § 111695, "[a]ny cosmetic is **adulterated** if it is not a hair dye and it is, or it bears or contains, a color additive that is unsafe within the meaning of Section 111665." (emphasis added).

[19] *Id.*

45.     As a general matter, the colors permitted for use in cosmetics are listed and regulated under Parts 73-74, Subpart C of the FDA regulation, 21 C.F.R. §§ 73.2030 - §73.2995, 74.2052 – 74.2711. However, pursuant to its vested authority to limit the use of certain colors, the FDA only permits certain color additives to be used in cosmetic products intended for use in the area of the eye.[20] For example, Blue No. 1 (§74.2101), Green No. 5 (§74.2205), Red No. 40 (§74.2340), and Yellow No. 5 (§74.2705) are color additives that may be "safely used" in "cosmetics intended for use in the area of the eye" as noted in their respective regulations.

46.     In contrast, the following colors **are not specifically permitted to be used in cosmetics intended for use in the area of the eye**:  Blue No. 4 (§74.2104), Brown No. 1 (§74.215), Green No. 3 (§74.2203), Green No. 6 (§74.2206), Green No. 8 (§74.2208), Orange No. 4 (§74.2254), Orange No. 5 (§74.2255), Orange No. 10 (§74.2260), Orange No. 11 (§74.2261), Red No. 4 (§74.2304), Red No. 6 (§74.2306), Red No. 7 (§74.2307), Red No. 17 (§74.2317), Red No. 21 (§74.2321), Red No. 22 (§74.2322), Red No. 27 (§74.2327), Red No. 28 (§74.2328), Red No. 30 (§74.2330), Red No. 31 (§74.2331), Red No. 33 (§74.2333), Red No. 34 (§74.2334), Red No. 36 (§74.2336), Violet No. 2 (§74.2602), Yellow No. 6 (§74.2706), Yellow No. 7 (§74.2707), Yellow No. 8 (§74.2708), Yellow No. 10 (§74.2710), and Yellow No. 11 (§74.2711).

47.     Under 21 C.F.R. § 70.5(a), "[n]o listing or certification of a color additive shall be considered **to authorize the use of any such color additive in any article intended for use in the area of the eye unless such listing or certification of such color additive specifically provides for such use**." (emphasis added); *see also* FDA Color Additives Fact Sheet ("You may not use a color additive in the area of the eye unless the regulation for that additive specifically permits such use." (citing 21 C.F.R. § 70.5(a)).  Because the regulations governing these colors do not specifically permit their use in cosmetics intended for use in the eye area, they are not authorized for such use and therefore may not be used in such cosmetic products. As such, any cosmetic product intended for use in the area of the eye and which contains any such color additives, is considered unsafe, misbranded, and

---

[20] The FDA expressly defines the term "area of the eye" as "the area enclosed with in the circumference of the supra-orbital ridge and the infra-orbital ridge, including the eyebrow, the skin below the eyebrow, the eyelids and the eyelashes, and conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge." 21 C.F.R. § 70.3(s).

adulterated under federal law, and therefore adulterated, unsafe, and misbranded under the Sherman Act, which specifically and independently adopts all color additive regulations of the FDCA. *See* California Health and Safety Code § 110090.

48.  The Products violate the Sherman Law[21] because they are cosmetics intended for use around the eye and they contain color additives that are prohibited for use on or around the eye under California Health and Safety Code § 110090. As such, the Products are unsafe, misbranded, and adulterated under California Health & Safety Code §§ 111665, 111755, and 111695.

## V.  Consumers Have Been Financially Injured As a Direct Result of Defendant's Representations and Omissions

49.  As outlined herein, Defendant has made material misrepresentations and omissions regarding the Products. Reasonable consumers purchasing the Products would find it material to their purchasing decisions whether an eyeshadow contains unsafe and unfit color additives that could stain or irritate the eye, and whether those color additives have been legally approved for use around the eye.

50.  Defendant knows or should have known that these representations and omissions are false and misleading. Moreover, Defendant knows or should have known that consumers would detrimentally rely on its representations and omissions in purchasing the Products.

51.  As a direct result of Defendant's deceptive marketing practices, consumers, including Plaintiffs and members of the proposed Classes, have suffered financial harm in the form of a price premium paid for the Products; i.e., consumers would not have purchased the Products, or would have paid significantly less for them, had they known that they contained color additives that are unsafe, unfit, and unapproved for use around the eye.

## CLASS ACTION ALLEGATIONS

52.  Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

---

[21] To be clear, Plaintiffs do not allege a violation of the FDCA as a basis for their claims, nor do they seek to enforce the FDCA by way of this action. Rather, Plaintiffs allege that Defendant's advertising, omissions, and sale of the Products violate California's Sherman Law.

CLASS ACTION COMPLAINT

**Nationwide Class**

All residents of the U.S. who purchased any of the Products within the applicable statute of limitation ("Nationwide Class").

**California Class**

All residents of California who purchased any of the Products within the applicable statute of limitation ("California Class").

**New York Class**

All residents of New York who purchased any of the Products within the applicable statute of limitation ("New York Class") (together with the Nationwide Class, and the California Class, the "Classes").

53.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether class certification is appropriate.

55.     **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiffs but is likely to be ascertained by Defendant's records. At a minimum, there likely are at least thousands of Class members.

56.     **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

  a.   whether Defendant's course of conduct alleged herein violates the statutes, regulations, and other laws that are pled in this Complaint;

  b.   whether reasonable consumers would rely on the advertising and omissions regarding the Products and reasonably believe the Products are safe, fit, and intended for use around the eye area;

  c.   whether Defendant knew or reasonably should have known that the lack of disclosures would lead reasonable customers to believe that the Products were safe, fit, and intended for use around the eye area;

d.   whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

e.   whether certification of each Class is appropriate under Rule 23;

f.   whether Plaintiffs and the members of each Class are entitled to declaratory, equitable, and/or other relief, and the scope of such relief; and

g.   the amount and nature of the relief to be awarded to the Plaintiffs and the Classes.

57.   **Typicality:** Plaintiffs' claims are typical of the other Class members because Plaintiffs, as well as Class members, purchased the Products and relied on the same representations and omissions regarding the Products. Plaintiffs and the members of each Class paid for Defendant's Products and would not have purchased them, or would have paid substantially less for them, had they known that the Products contained color additives that are unsafe, unfit, and unapproved for use around the eye.

58.   **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

59.   **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes.

60.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against Defendant.

CLASS ACTION COMPLAINT

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750,** *et seq.*
**(***For the California Class***)**
**(***For Injunctive Relief Only***)**

61. Plaintiffs Suarez and Nyberg repeat the allegations contained in paragraphs 1-60 above as if fully set forth herein.

62. Plaintiffs Suarez and Nyberg bring this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

63. The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiffs Suarez and Nyberg and members of the California Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

64. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By advertising the Products as eyeshadows that can be used on the area of the eye, Defendant has represented and continues to represent that the Products have characteristics and uses (i.e., that all color palettes in the Products can be used safely around the eye) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

65. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By advertising the Products as eyeshadows that can be used on the area of the eye, Defendant has represented and continues to represent that the Products are of a particular standard, quality, or grade (i.e., that all color palettes in the Products can be used safely around the eye) that they do not actually meet.  Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

66. Moreover, Defendant has violated the CLRA by failing to adequately disclose that the Products contain unsafe, unfit, and unapproved color additives, or that certain palettes should not be used around the eye.

67.     At all relevant times, Defendant has known or reasonably should have known that the challenged representations and omissions are false and deceptive, and that Plaintiffs Suarez and Nyberg and other members of the California Class would reasonably and justifiably rely on these representations and omissions when purchasing the Products, and reasonably and justifiably believe that all the color additives in the Products are safe, fit, and approved for use around the eye. Nonetheless, Defendant deceptively advertises the Products as such to deceive consumers into purchasing its Products.

68.     Plaintiffs Suarez and Nyberg and members of the California Class have reasonably relied on Defendant's misleading representations and omissions when purchasing the Products and reasonably believed that all the color additives in the Products were safe, fit, and approved for use around the eye. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiffs Suarez and Nyberg and members of California Class.

69.     Plaintiffs Suarez and Nyberg and members of the California Class have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them.

70.     Under Cal. Civ. Code § 1782, on April 4, 2024, Plaintiffs Suarez and Nyberg, through their undersigned counsel, sent Defendant a notice letter through certified mail, notifying Defendant of its violations under the CLRA (as well as other statutes and laws). Because the 30-day cure period has not yet elapsed under the CLRA, Plaintiffs Suarez and Nyberg currently only seek injunctive relief under the CLRA. If the 30-day period elapses and Defendant has not yet cured its conduct under the CLRA, Plaintiffs Suarez and Nyberg intend on amending this Complaint to also seek damages under the CLRA.

CLASS ACTION COMPLAINT

1

2

3

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law ("FAL")**
**California Business & Professions Code § 17500, *et seq*.**
**(*For the California Class*)**

4      71.    Plaintiffs Suarez and Nyberg repeat the allegations contained in paragraphs 1-60 above

5   as if fully set forth herein.

6      72.    Plaintiffs Suarez and Nyberg bring this claim individually and on behalf of the

7   members of the proposed California Class against Defendant.

8      73.    The FAL makes it "unlawful for any person to make or disseminate or cause to be

9   made or disseminated before the public . . . in any advertising device . . . or in any other manner or

10  means whatever, including over the Internet, any statement, concerning . . . personal property or

11  services professional or otherwise, or performance or disposition thereof, which is untrue or

12  misleading and which is known, or which by the exercise of reasonable care should be known, to be

13  untrue or misleading." Cal. Bus. & Prof. Code § 17500.

14     74.    Defendant has represented and continues to represent to the public, including Plaintiffs

15  Suarez and Nyberg and members of the proposed California Class, through its deceptive

16  representations and omissions, that the Products, including all their color additives, are safe and fit

17  for use as eyeshadows around the eye area. However, this is false and misleading because the Products

18  contain color additives that are unsafe, unfit, and unapproved for use around the eye.  Because

19  Defendant has disseminated false and misleading information and omissions regarding the Products,

20  and Defendant knows, knew, or should have known through the exercise of reasonable care that the

21  representations and omissions were and continue to be false and misleading, Defendant has violated

22  the FAL.

23     75.    As a result of Defendant's false advertising, Defendant has and continues to

24  unlawfully obtain money from Plaintiffs Suarez and Nyberg and members of the California Class.

25  Plaintiffs Suarez and Nyberg therefore request that the Court cause Defendant to restore this

26  fraudulently obtained money to them and members of the proposed California Class, to disgorge the

27  profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or

28  violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs Suarez and

CLASS ACTION COMPLAINT

1  Nyberg and members of the proposed California Class may be irreparably harmed and/or denied an

2  effective and complete remedy.

3

4                              **THIRD CLAIM FOR RELIEF**
                    **Violation of California's Unfair Competition Law ("UCL"),**

5                   **California Business & Professions Code § 17200, *et seq.***
                              **(*For the California Class*)**

6

7          76.    Plaintiffs Suarez and Nyberg repeat the allegations continued in paragraphs 1-60

8  above as if fully set forth herein.

9          77.    Plaintiffs Suarez and Nyberg bring this claim individually and on behalf of the

10  members of the proposed California Class against Defendant.

11         78.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair

12  competition shall mean and include unlawful, unfair or fraudulent business practices and unfair,

13  deceptive, untrue or misleading advertising . . . ."

14         79.    Under the UCL, a business act or practice is "unlawful" if it violates any established

15  state or federal law or regulation. Defendant's false and misleading advertising of the Products was

16  and continues to be "unlawful" because it violates the Sherman Law, as set forth herein, as well as

17  the CLRA, the FAL. As a result of Defendant's unlawful business acts and practices, Defendant has

18  unlawfully obtained money from Plaintiffs Suarez and Nyberg and members of the proposed

19  California Class.

20         80.    Under the UCL, a business act or practice is "unfair" if its conduct is substantially

21  injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and

22  unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of

23  the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to

24  purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who

25  rely on the labeling and advertising of the Products. Deceiving consumers into believing that the

26  Products are "eyeshadow" palettes that can safely be used around the eye and contain only ingredients

27  that are safe, fit and approved for use in the eye area, when in fact certain color additives in the

28  Products are unsafe, unfit, and unapproved for use around the eye, substantially injures consumers,

offends public policy and is immoral, unethical, oppressive, and unscrupulous. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiffs Suarez and Nyberg and members of the proposed California Class.

81.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the Products, including all their color additives, are safe, fit, and approved for use around the eye. Because Defendant misled Plaintiffs Suarez and Nyberg and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiffs Suarez and Nyberg and members of the California Class.

82.     Plaintiffs Suarez and Nyberg request that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs Suarez and Nyberg and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313; N.Y. U.C.C. Law § 2-313**
(*For the California Class and New York*)

83.     Plaintiffs repeat the allegations contained in paragraphs 1-60 above as if fully set forth herein.

84.     Plaintiffs Suarez and Nyberg bring this claim individually and on behalf of the members of the California Class against Defendant. Plaintiff Salmon brings this claim individually and on behalf of members of the New York Class against Defendant.

85.     Both California's and New York's express warranty statutes provide that "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes

part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313; N.Y. U.C.C. Law § 2-313(1).

86.     As outlined herein, Defendant has expressly warranted that the Products are eyeshadows to be used around the eye area. However, as alleged herein, these express representations are false and misleading as the Products contain color additives that are unsafe, unfit, and unapproved for use around the eye.

87.     Defendant's representations are: (a) affirmations of fact or promises made by Defendant to consumers that the Products, including all their color additives, are safe and fit for use around the eye area; (b) became part of the basis of the bargain to purchase the Products when Plaintiffs and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

88.     Plaintiffs and members of the California Class and New York Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

89.     Defendant has breached the express warranties made to Plaintiffs and members of the California Class and New York Class by failing to provide the Products as promised.

90.     Plaintiffs and members of the California Class and New York Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiffs and members of the California Class and New York Class had known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with them. As a result, Plaintiffs and members of the California Class and New York Class suffered injury and deserve to recover all damages afforded under the law.

91.     On December 5, 2023, Plaintiff Salmon, through her undersigned counsel, notified Defendant of its breach of express warranty by way of a notice letter outlining the foregoing allegations. On April 4, 2024, Plaintiffs Suarez and Nyberg, through their undersigned counsel, notified Defendant of its breach of express warranty by way of a notice letter outlining the foregoing allegations.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2313; N.Y. U.C.C. Law § 2-314(2)(c)**
(***For the California Class and New York Class***)

92.     Plaintiffs repeat the allegations contained in paragraphs 1-60 above as if fully set forth herein.

93.     Plaintiffs Suarez and Nyberg bring this claim individually and on behalf of the members of the California Class against Defendant. Plaintiff Salmon brings this claim individually and on behalf of members of the New York Class who purchased any of the Products directly on the Juvia's Place website, against Defendant.

94.     Both California's and New York's implied warranty of merchantability statutes provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1); N.Y. U.C.C. Law § 2-314(1).

95.     California's and New York's implied warranty of merchantability statutes also provide that "[g]oods to be merchantable must be at least such as . . . (c) are fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c); N.Y. U.C.C. § 2-314(2)(c).

96.     Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California and New York consumers.

97.     Defendant's Products are not merchantable because they are not "fit for the ordinary purposes for which such goods are used." This is because the Products contain color additives which are unsafe, unfit, and unapproved for use around the eye, rendering the Products unfit for use as eyeshadows for use around the eye.

CLASS ACTION COMPLAINT

98.     Plaintiffs, as well as other California and New York consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California and New York law and Defendant has breached its implied warranty of merchantability in regard to the Products.

99.     If Plaintiffs and members of the California Class and New York Class had known that Products were unfit for use as eyeshadows, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiffs and members of the California Class and New York Class have suffered injury and deserve to recover all damages afforded under the law.

100.    On December 5, 2023, Plaintiff Salmon, through her undersigned counsel, notified Defendant of its breach of implied warranty by way of a notice letter outlining the foregoing allegations. On April 4, 2024, Plaintiffs Suarez and Nyberg, through their undersigned counsel, notified Defendant of its breach of implied warranty by way of a notice letter outlining the foregoing allegations.

**SIXTH CLAIM FOR RELIEF**
**Violation of New York's General Business Law § 349**
(***For the New York Class***)

101.    Plaintiff Salmon repeats the allegations contained in paragraphs 1-60 above as if fully set forth herein.

102.    Plaintiff Salmon brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

103.    New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

104.    The conduct of the Defendant alleged herein constitutes deceptive acts or practices in violation of GBL § 349, and as such, Plaintiff Salmon and the New York Class members seek monetary damages.

105.    Specifically, Defendant falsely and deceptively advertises the Products as safe and suitable as eyeshadows to be used around the eye area when they contain color additives that are not

35

safe, fit, or approved for use around the eye. Moreover, Defendant has failed to adequately disclose that the Products contain unsafe, unfit, and unapproved color additives, or that certain color palettes should not be used around the eye.

106.    This improper consumer-oriented conduct induced Plaintiff Salmon and the New York Class to purchase and pay a premium for the Products when they otherwise would not have paid the same price had they known the truth. Accordingly, Plaintiff Salmon and the New York Class received less than what they bargained and/or paid for.

107.    As a result of Defendant's deceptive acts and practices, Plaintiff Salmon and the New York Class are entitled to monetary, compensatory, statutory, treble, and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### Violation of New York's General Business Law § 350
#### (*For the New York Class*)

108.    Plaintiff Salmon repeats the allegations contained in paragraphs 1-60 above as if fully set forth herein.

109.    Plaintiff Salmon brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

110.    GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

111.    Defendant's marketing and advertising of the Products as eyeshadows that can be safely used around the eye area is materially misleading as outlined herein.

112.     Moreover, Defendant's advertising fails to reveal the material fact that the Products contain unsafe, unfit, and unapproved color additives, or that certain color palettes should not be used around the eye.

113.     Plaintiff Salmon and the New York Class relied on Defendant's misleading representations and omissions and reasonably believed the Products, including their color additives, were all safe, fit, and approved for use around the eye.

114.     Defendant knowingly made material misrepresentations and failed to include adequate disclosures regarding the Products, as outlined herein, demonstrating willful, wanton, and reckless disregard for consumer safety.

115.     As a result of Defendant's misleading deceptive acts and practices, Plaintiff Salmon and the New York Class are entitled to monetary, compensatory, statutory, treble, and punitive damages, as well as restitution and disgorgement of all profits obtained through Defendant's deceptive conduct, along with interest, attorneys' fees, and costs.

**EIGHTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*for the Nationwide Class; alternatively, for the New York Class and California Class*)**

116.     Plaintiffs repeat the allegations contained in paragraphs 1-60 above as if fully set forth herein.

117.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant. Alternatively, Plaintiffs bring this claim individually and on behalf of the members of the proposed New York Class and California Class against Defendant.

118.     As alleged herein, Defendant has made misleading representations and omissions regarding the Products to induce Plaintiffs and other consumers to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on these misleading representations and omissions and have not received all of the benefits promised by Defendant. Plaintiffs and members of the proposed Classes have therefore been induced by Defendant's misleading and deceptive representations and omissions about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

CLASS ACTION COMPLAINT

119.    Plaintiffs and members of the proposed Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiffs and members of the proposed Classes.

120.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the proposed Classes—i.e., Plaintiffs and members of the proposed Classes did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it.

121.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the proposed Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its false, misleading, and unlawful conduct as alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Classes, respectfully pray for following relief:

A.    Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class Counsel;

B.    A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.    An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

E.    An award of nominal, punitive, and statutory damages;

F.    An award to Plaintiffs and their counsel of reasonable expenses and attorneys' fees;

CLASS ACTION COMPLAINT

1    G.    An award to Plaintiffs and their proposed Classes of pre and post-judgment interest,

2   to the extent allowable; and

3    H.    For such further relief that the Court may deem just and proper.

4   **DEMAND FOR JURY TRIAL**

5    Plaintiffs, on behalf of themselves and the proposed Classes, hereby demand a jury trial with

6   respect to all issues triable of right by jury.

7

8   DATED: April 23, 2024                **TREEHOUSE LAW, LLP**

9                                        By:  /s/ *Benjamin Heikali*

10
                                         Benjamin Heikali (SBN 307466)
11                                       Ruhandy Glezakos (SBN 307473)
                                         Joshua Nassir (SBN 318344)
12                                       Nicole Babaknia (SBN 334526)
                                         2121 Avenue of the Stars, Suite 2580
13                                       Los Angeles, CA 90067
                                         Telephone: (310) 751-5948
14                                       bheikali@treehouselaw.com
                                         rglezakos@treehouselaw.com
15                                       jnassir@treehouselaw.com
                                         nbabaknia@treehouselaw.com
16

17                                       *Attorneys for Plaintiffs and the*
                                         *Putative Classes*
18

19

20

21

22

23

24

25

26

27

28

39